ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, v. H. T. THROWER, Trading as THROWER TILE AND MARBLE COMPANY.

(Filed 2 February, 1940.)

1. **Carriers § 14—Question of which rate classification goods in question came under held for jury under the evidence.**

The parties agreed that the rate schedule in effect at the time of the shipment in question prescribed a rate of 51c per hundredweight for "asphalt paving blocks or tiles" and $1.10 per hundredweight for "asphalt composition facing or flooring tile." Plaintiff carrier contended that the shipment was some kind of asphalt composition and liquid asphalt and offered evidence that the consignee laid same for the floor of a building and cemented same down with the liquid asphalt, that the duplicate bill of lading showed that the shipment was packed in "389 boxes," while asphalt blocks would have been loaded on the car without containers or wrappers of any kind, and that defendant consignee wrote on his check given in payment for the charges the words "asphalt tile," thus indicating that at the time he knew the shipment was asphalt tile, and that the defendant stopped payment on the check at the instance of the consignor. Defendant consignee's evidence and contentions were to the effect that the duplicate bill of lading had been altered and that the classification put on the shipment by the consignor should govern. *Held:* The evidence was properly submitted to the jury upon the question of which classification the goods came under, and the court made no error in denying defendant's requested instruction to the effect that if the jury believed all the evidence to find that the shipment came under the lower classification.

2. **Same—**

Defendant consignee stopped payment on his check given in payment of freight charges on the shipment in question, contending that the charges were excessive for that they were based upon an inapposite rate classification. *Held:* It was competent for plaintiff carrier to introduce in evidence correspondence between the shipper and defendant tending to show that defendant stopped payment on the check at the instigation of the shipper.

3. **Same—**

Where a consignee accepts and uses a shipment of goods and gives his check in payment of the freight charges, he may not thereafter repudiate the matter and contend that the charges were excessive in that they were based upon an inapposite rate classification.

4. **Same—**

Defendant consignee stopped payment on his check given in payment of freight charges, contending that the charges were excessive in that they were based upon an inapposite rate classification. *Held:* In the carrier's action on the check, the burden was properly placed upon defendant consignee to show that the freight charges should have been based upon a lower rate classification as contended by him.

**5. Appeal and Error § 39a—**

    A new trial will not be awarded for mere error alone, but the appellant must show not only that error was committed, but also that the error was material and prejudicial, amounting to a denial of a substantial right.

Appeal by defendant from *Burney, J.,* at 27 March, 1939, Civil Term, of Cumberland. No error.

The complaint alleges, in part: "On the 9th day of August, 1937, the defendant H. T. Thrower, in the due course of business, signed and delivered to the plaintiff at its office in Fayetteville, North Carolina, his check in the sum of $568.60 ($563.49—5.11) drawn by him on the Commercial National Bank of Charlotte, North Carolina, and payable to the order of the plaintiff. . . . On the 13th day of August, 1937, the said check was duly presented to the drawee bank, to wit, Commercial National Bank of Charlotte, for payment in due course; and, on said date, the payment of the same was refused, and the said check was duly protested for nonpayment. . . . That the protest fees amounting to $1.50 were charged to and paid by plaintiff, making a total amount due on the check of $570.10. That on or about the 15th day of August, 1937, the defendant H. T. Thrower paid to the plaintiff, on account of said check, the sum of $5.11." There is now due and owing $564.99 and interest from 15 August, 1937, and demand for payment.

In answer to the complaint, the defendant admitted that the check was duly protested for nonpayment, but denies liability and for a further answer and defense says: "That on or about July 27, 1937, the defendant entered into a contract for the performance of certain work incident to the construction of a school building in the city of Fayetteville, North Carolina; that on or about the same date the defendant ordered and purchased from a manufacturer in San Antonio, Texas, certain materials necessary to the performance of the contract which the defendant had entered into. That the materials so ordered and purchased by the defendant consisted of 49,161 pounds of asphalt paving blocks or tiles, and 2,065 pounds of liquid asphalt. That the said materials were shipped to the defendant from Houston, Texas, the freight charges on such shipment to be paid by and collected from the defendant upon the delivery of said materials by the plaintiff in Fayetteville, North Carolina. That upon the arrival of the said shipment in Fayetteville, North Carolina, the plaintiff demanded of the defendant that he pay the sum of $563.49 as freight charges on the said shipment and refused to deliver the said materials except upon the payment of that sum and required and compelled the defendant to pay the said sum of $563.49 before obtaining and in order to obtain possession of the said materials. That the defendant did thereupon, on or about August 9, 1937, through his

agents and representatives, make, issue and deliver to the plaintiff his check drawn on the Commercial National Bank of Charlotte, North Carolina, payable to the order of the plaintiff, for the aforesaid sum of $563.49, plus the sum of $5.11 due by the defendant to the plaintiff, as freight charges on another shipment from a manufacturer in New Jersey, which other shipment had been received by the defendant from the plaintiff on or about the same date—the total amount of said check thus being $568.60. That after the making, issuing and delivering of the aforesaid check, the defendant being informed and believing that the plaintiff had charged an excessive and unlawful amount as and for the freight bill on the aforesaid shipment from Houston, Texas, ordered the bank on which the aforesaid check was drawn not to pay the same upon presentation; and that the said check was not paid upon presentation and has not been paid. That the defendant has since, however, paid to the plaintiff the sum of $5.11, the same being the correct amount of the freight charges on the shipment referred to above received by the defendant from New Jersey, as to which shipment and the freight charges therefor there is here no controversy. That as the defendant is informed and believes, the correct, lawful and proper charge on the aforesaid shipment of freight from Houston, Texas, to Fayetteville, North Carolina, is $261.25, that is, 51c per hundredweight (the total weight of said shipment being 51,226 pounds) and not $563.49, or $1.10 per hundredweight, as charged by the plaintiff." That the plaintiff's charge for what was shipped is contrary to that allowed on shipments from Houston, Texas, to Fayetteville, North Carolina, as fixed by the Interstate Commerce Commission of the United States. That the correct charge was $261.25 and all over that amount was illegal. The defendant tenders judgment for that amount. That the plaintiff recover nothing and "go without day."

The issues submitted to the jury and their answers thereto were as follows:

"1. Were the commodities involved in the shipment for which the check in question was given asphalt paving blocks or tiles, as alleged in the answer? Ans.: 'No.'

"2. Is the defendant indebted to the plaintiff, and if so, in what amount? Ans.: 'Yes, $564.99, with interest from August 15, 1937."

The judgment of the court below was as follows: "This cause coming on to be heard at this term of court, before the undersigned judge, and a jury; and the jury having answered the issues as above. It is therefore, on motion of Rose & Lyon, attorneys for the plaintiff, considered, ordered and adjudged that the plaintiff, Atlantic Coast Line Railroad Company, do have and recover of the defendant, H. T. Thrower, trading as Thrower Tile & Marble Company, the sum of $564.99, with interest

thereon from and after August 15, 1937, together with the costs of this action, to be taxed by the clerk.    John J. Burney, Judge Presiding."

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.    The material ones and necessary facts will be set forth in the opinion.

*W. A. Townes and Rose & Lyon for plaintiff.*
*Guthrie, Pierce & Blakeney for defendant.*

CLARKSON, J.    The defendant requested the court below to instruct the jury that if they believe the evidence, they should answer the first issue "Yes."    The court below refused to give this instruction, and in this we can see no error on the facts and circumstances of this case. The issues submitted to the jury were correct, in fact, defendant made no objection, nor did he submit other issues.    The controversy, in the final analysis, was one of 'fact, viz.: What was the actual commodity contained in a carload shipment, which moved from the Uvalde Rock Asphalt Company, at Houston, Texas, to the defendant, H. T. Thrower, at Fayetteville, North Carolina, in August, 1937?    If the commodity was "Asphalt Composition Facing or Flooring Tile," it carried a freight rate of one dollar and ten cents ($1.10) per hundred pounds.    If the commodity was "Asphalt Paving Blocks or Tiles," it carried a freight rate of fifty-one cents (51c) per hundred pounds.

In the stipulation agreed upon by the parties, was the following: "That during the month of August, 1937, the freight tariffs and schedules of rates made, promulgated and filed with the Interstate Commerce Commission, and published, and applicable to shipments of freight from Houston, Texas, to Fayetteville, North Carolina, over the routes referred to above, fixed the freight charge upon shipments of 'asphalt composition facing or flooring tile' from Houston, Texas, to Fayetteville, North Carolina, over the routes referred to above at $1.10 per hundredweight and the freight charges upon shipments of 'asphalt paving blocks or tiles' from Houston, Texas, to Fayetteville, North Carolina, over the routes referred to above, at 51c per hundredweight."

The plaintiff's evidence was to the effect that the defendant knew at the time that it was tile, because he wrote upon the face of his check that the check was covering the freight charges on a shipment of "asphalt tile," and he knew at that time, and his agent and servants knew, that was tile and not paving blocks.    The defendant received the commodities and used them in paving the second and third floors of the high school building located in Fayetteville, in August, 1937.    The liquid asphalt that was shipped along with it was used to cement and place the tile in firm condition upon the floors of the school building and to cement

and hold it together, and that is what the liquid in the barrels that were shipped along with it was for. The bill of lading shows that it was packed in "389 boxes" and that tile is shipped in packs or bundles and that if it was asphalt blocks as used for paving that it would be just loaded in a car as blocks and not shipped in boxes, as was done in this case. That the exhibit offered in this case from one's own knowledge that it is tile, that it is not a block and that it is not asphalt, but it is a composition of some kind, made especially for the purpose of laying a floor in office buildings, and school buildings, such as it was used for in this case. That in truth and in fact this particular shipment was not asphalt paving blocks and that it was in truth asphalt composition facing or flooring tile.

The defendant denied that the evidence and contentions of plaintiff were correct. His evidence and contentions were that someone interested in getting a large amount of freight on this shipment got hold of the duplicate copy and he erased "asphalt paving blocks or tile" and inserted "389 boxes" to the first article in the bill of lading as "asphalt composition facing or flooring tile" and set up the rate from 51c to $1.10 per hundredweight; and he contends that was wrong, that the classification as originally billed out by the people who manufactured, that their classification should govern and that you should answer the first issue "No."

The court charged the jury, among other things: "Now, gentlemen of the jury, if the defendant, H. T. Thrower, trading as Thrower Tile & Marble Company, has satisfied you from the evidence and by its greater weight, the burden being upon him to so satisfy you, that the commodities involved in the shipment for which the check in question was given was asphalt paving blocks or tile, as alleged in the answer, then it would be your duty to answer that first issue 'Yes'; if he has failed to so satisfy you, it will be your duty to answer it 'No.'" The defendant excepted and assigned error as to certain correspondence introduced in evidence from the shipper to him, indicating that the payment of defendant's check was stopped at the shipper's instance. We think this some probative evidence to indicate defendant was not the real party who stopped the payment of the check. It was, at least, some evidence of the defendant why he stopped payment of the check. Plaintiff offered in evidence, over the defendant's objection, the carrier's way-bill or copy of the bill of lading, in which the commodities here in question were described and classified as commodities other than "asphalt paving blocks or tiles." Defendant contended that this paper was incompetent for the reason that the original bill of lading was the best evidence of the matters set forth therein and had already been introduced in evidence.

The defendant further contended that the copy on its face had been altered, and this was contrary to what was set forth in the original bill of lading. Be that as it may, the defendant accepted the commodities as plaintiff contends, used them and gave a check for them, and is not now permitted, at the instance of the shipper or defendant, to repudiate the matter. All of the evidence above set forth and the contentions were competent, and the fact was for the jury to determine. From the pleadings we think the burden of proof, a substantial right, was properly placed on defendant.

We think that none of the exceptions and assignments of error to the charge or evidence on the trial can be sustained. We think the charge of the court set forth the law applicable to the facts and was fair to both sides. The contentions were accurately and carefully given.

*Devin, J.,* in *Collins v. Lamb,* 215 N. C., 719 (720), for the Court says: " 'Verdicts and judgments are not to be set aside for harmless error for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of is erroneous, but also that it is material and prejudicial, amounting to a denial of some substantial right.' *Wilson v. Lumber Co.,* 186 N. C., 56 (citing many authorities) . . . (p. 721) The record reveals the diligence of appellant's able counsel. Nothing has been overlooked that might help his cause. But the jury has accepted the view presented by the evidence of the plaintiffs, and rendered a verdict in accord with their contentions. Upon consideration of the entire record we reach the conclusion that the judgment below should be affirmed."

We have examined the record and able briefs of the litigants. The question is one mainly of fact. We can see no prejudicial or reversible error on the record.

No error.